## McKAY v. UNION OIL CO. OF CALIFORNIA (YATES, Third-Party Defendant).
### No. 3168–KA.

District Court, Alaska, First Division, Ketchikan.

Dec. 9, 1952.

Stump & Bailey, Ketchikan, Alaska, for plaintiff.

Ziegler, King & Ziegler, Ketchikan, Alaska, for defendant and third-party plaintiff.

Edward Ginger, Ketchikan, Alaska, for third-party defendant.

FOLTA, District Judge.

Plaintiff sues to recover under the terms of a charter of a scow at the rate of $10 a day, entered into April 3, 1950. The scow was never returned and is now seriously damaged. The amount sued for, $4000, is the stipulated value of the scow at the time it was chartered.

It appears that sometime in 1949 the defendant sold to Yates, two storage tanks, with accessories and a foundation for the tanks, for $2,310, to enable him to establish an oil station at Kelly Cove for the sale of defendant's products. This contract was lost and, hence, another contract, identical in terms, was executed September 15, 1949, defendant's exhibit "E". Among the articles listed as sold is the item:

"Transportation Union Bay to Kelly Cove $400"

It is admitted that under this contract the defendant was to make delivery of the tanks, etc., at Kelly Cove.

The defendant contends that Yates requested that he be allowed to tow the scow with the tanks aboard to Kelly Cove so that he might earn the difference between $400—the amount charged for transportation in the contract—and the cost of hiring a scow and insuring it and the cargo; that in response to this request and solely for the accommodation of Yates and as his agent, defendant's District Representative Hansen chartered the scow and agreed to procure the insurance. Yates contends that he undertook to tow the scow to avoid any further delay in the delivery of the tanks on the part of the defendant. Hansen chartered the scow from the plaintiff, its owner, at the rate of $10 a day, according to the plaintiff, and at the rate of $10 for short term and $5 for long term charter, according to Hansen. But Hansen did not procure insurance on the scow, although he applied for insurance on the scow as loaded which, however, could not be issued until after the tanks had been placed aboard the scow and the scow and its cargo had been inspected by a marine surveyor and approved for insurance. Before such an inspection could be made, however, the scow was torn from its moorings in a storm, blown ashore and damaged. Notwithstanding, Yates towed the scow and cargo to Kelly Cove without insurance, but neither he nor the defendant did anything to return the scow, which

has since been further damaged to such an extent as to have little, if any, value.

Most of the evidence was directed to proving the nature of the transaction between Hansen and Yates and the greater part of this related to subsequent discussions of liability and negotiations for a settlement. What was said on these occasions might support an inference that Hansen merely acted as Yates' agent, but in my view of the testimony, the more reasonable inference is that the object of these various discussions was to compromise the claim by way of a purchase of the scow by Yates for less than what was then due plaintiff under the charter. On one of these occasions, Hansen turned over to the plaintiff's agent Williams, the defendant's check made out to Yates in the sum of $969.38 and then induced Yates to endorse it. This was to be a first payment on the purchase price of $3,500 which the plaintiff was willing to accept in settlement of the claim at that time. Defendant points to this as evidence of recognition of liability on the part of Yates, while Yates asserts he was coerced into this by the promise of Hansen to advance him $1,500 to apply on the purchase price. No further payment, however, was made. The defendant also points to the fact that the plaintiff's agent, Williams, made out a bill in July 1951, defendant's exhibit "C", for the balance then due under the charter of $910 to "the Union Oil Company of California and/or Cliff Yates" and argues that this is evidence that the plaintiff knew that Hansen was acting for Yates. The plaintiff's agent Williams died several months ago so it is unknown what he would have said, but I am constrained to believe that after the lapse of several months from the time that the scow was chartered, it must have become known that Yates towed it to Kelly Cove and that it was then in his possession and that the bill was made out in the manner referred to in order to put Yates on notice that he, too, would be held for whatever liability he might have incurred in connection with this transaction.

But it is unnecessary to determine the exact nature of the transaction between Yates and Hansen, for I am of the opinion that the plaintiff is entitled to recover under the theory that in chartering the scow Hansen acted within the scope of his apparent authority as District Representative of the Union Oil Company or the theory that he acted under the incidental authority flowing from the contract between the Union Oil Company and Yates. Hansen was the District Representative of the defendant at the time of the charter—a position somewhat higher in grade and authority than that of resident manager; the plaintiff was familiar with the nature of the defendant's business and had known Hansen for several years before entering into the charter. I find that Hansen told the plaintiff that he wanted to charter the plaintiff's scow to transport some oil tanks from Union Bay to Kelly Cove; that after being told that the scow would be towed by the motorship Beloit II, which plaintiff knew to be suitable for the job, and that insurance would be procured in the sum of $4,000 on the scow, the plaintiff offered to charter the scow for $10 a day and his offer was accepted by Hansen. I further find that Hansen did not tell the plaintiff, and that the plaintiff did not know, or have knowledge of any facts which would charge him with knowledge, that Hansen was acting solely for Yates and as his agent.

From the foregoing, I conclude that not only was the charter of a scow for the transportation of the oil tanks within the scope of the apparent authority of Hansen, but also that his authority in this particular transaction was incidental to his authority to execute the contract between defendant and Yates, defendant's exhibit "E" and, hence, I am of the opinion that Hansen acted as the defendant's agent and that the plaintiff is entitled to recover the sum of $4,000 from the defendant Union Oil Company.